**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 28, 2025

LETTER TO ALL COUNSEL OF RECORD

Re: *Kristina M. o/b/o Zachary V. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
Civil No. 24-0477-CDA

Dear Counsel:

On February 19, 2024, Plaintiff Kristina M. ("Plaintiff"), on behalf of deceased son, Zachary V., petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Zachary V.'s claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6) and the parties' briefs (ECFs 9, 11, 12). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I. PROCEDURAL BACKGROUND

Zachary V. filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on March 31, 2020, alleging a disability onset of August 1, 2016. Tr. 279-92. Zachary V.'s claims were denied initially and on reconsideration. Tr. 186-93, 197-204. On October 6, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 113-46. Following the hearing, in December 2022, Zachary V. passed away. Tr. 22, 425. Upon Zachary V.'s death, Plaintiff assumed Zachary V.'s role as claimant. Tr. 7. On March 7, 2023, the ALJ determined that Zachary V. was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 19-32. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security, on February 19, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Zachary V. had "not engaged in substantial gainful activity since August 1, 2016, the alleged onset date." Tr. 25. At step two, the ALJ found that Zachary V. suffered from the severe impairments of "chronic liver disease, depressive disorder, anxiety disorder, and substance abuse disorder." Tr. 25. The ALJ also determined that Zachary V. suffered from the non-severe impairments of hepatitis. Tr. 25. At step three, the ALJ determined that Zachary V. did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 25. Despite these impairments, the ALJ determined that Zachary V. retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be able to perform simple, routine tasks and carry out simple instructions, but cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. He would be able to perform jobs in a low stress work environment defined as requiring only occasional decision making and occasional changes in the work setting. He would be able to tolerate occasional interaction with coworkers and supervisors, and no interaction with the public.

Tr. 27. The ALJ determined that Zachary V. was unable to perform past relevant work as an Electrical Helper (DOT[3] # 821.667-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 30. Therefore, the ALJ concluded that Zachary V. was not

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

disabled. Tr. 31.

## III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ failed to provide a proper narrative discussion to support the conclusion that Zachary V.'s severe mental and physical impairments necessitated a limitation that Zachary V. "cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas." ECF 9, at 7-12; ECF 12, at 1-2. Defendant counters that the ALJ properly accounted for Zachary V.'s moderate concentration, persistence, and pace ("CPP") limitations when formulating the RFC and supported the RFC determination with substantial evidence. ECF 11, at 6-16.

A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

Plaintiff maintains that the ALJ's determination is not supported by substantial evidence because they lacked a proper narrative discussion of the RFC's production rate pace limitation. ECF 9, at 9-11. Plaintiff insists that the ALJ failed to explain why the ALJ "believed such a limitation would be sufficient to accommodate [Zachary V.'s] impairments." *Id.* The Court finds these arguments unavailing.

Here, the ALJ considered Zachary V.'s testimony reporting "sleep interference, unpredictable fluctuating moods, self-isolation, and difficulty motivating[,]" as well as being

"unhoused for much of the relevant period." Tr. 27. Zachary V. also "acknowledged that his struggles with substance abuse have affected his mental health in terms of judgment, decision-making, and motivation[,]" and that he spends "almost all [his] time recovering from the effects of substances." Tr. 27.

Despite Zachary V.'s hearing testimony, the ALJ concluded that Zachary V.'s "statements concerning the intensity, persistence and limiting effects of [Zachary V.'s alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 28. The ALJ noted that Zachary V. had "been prescribed Wellbutrin, Lexapro, Trazadone, and Suboxone" and that his primary care providers reported flattened affect. Tr. 28. The ALJ noted that Zachary V.'s "PHQ-9 and GAD-7 results are consistent with severe anxiety and depression, but there are no significant manifestations of mood, cognition, or general mental health deficits noted." Tr. 28. The ALJ also observed that Zachary V. was discharged from mental health treatment at Chase Brexton in October 2020 after only three visits, and that Zachary V.'s providers noted that he "struggled with attendance and had difficulty due to phone being inactive and unstable housing." Tr. 28.

The ALJ considered that, during a psychiatric consultative examination in October 2020, Zachary V. "reported depression, anxiety, low energy, unstable memory and concentration, poor motivation, and feelings of helplessness, hopelessness, and guilt[,]" and "described panic attacks, characterized by shortness of breath palpitations, tremor, and sweating." Tr. 28. However, Zachary V.'s records revealed a "largely unremarkable examination," and he scored 30/30 on the mini mental state examination. Tr. 28. The ALJ observed that, in February 2022, Zachary V. scored a 29/30 on the mini mental state examination, "which is still well within the range of normal cognitive functioning[,]" after losing "one point on the delayed recall task." Tr. 28.

The ALJ noted that Zachary V.'s "remaining record consists mostly of treatment for substance abuse," noting that Zachary V. had a "lengthy history of polysubstance abuse, including alcohol, opioids, and narcotics, with use occurring during the relevant period." Tr. 28. The ALJ also noted that the record supported a relapse in October 2020, and that Zachary V. "attributed a relapse in early 2022 to stress." Tr. 28. Zachary V. "reported no inpatient or emergency psychiatric treatment independent of substance use or withdrawal," but he had been hospitalized in June 2021 for heroin detoxification with reports of "depressive and anxiety symptoms within the context of withdrawal." Tr. 28. The ALJ noted that Zachary V. "stopped working in 2014 because he was arrested and incarcerated rather than due to limitations based on his alleged impairments." Tr. 28. The ALJ also considered the third-party function report of Plaintiff, Zachary V.'s mother, who "reported that [Zachary V.] was unhoused and spent his entire day soliciting money on a corner which he then uses to purchase opioids." Tr. 29. The ALJ noted that Plaintiff reported Zachary V.'s deficiencies in personal care and eating habits, as well as limitations in judgment, focus, and ability to manage stress. Tr. 29.

After examining the objective evidence, the ALJ noted that "[i]t is reasonable to limit [Zachary V.'s] ability to tolerate stress and changes, make sound decisions, interact with others, and perform at pace." Tr. 29. As such, the ALJ's RFC states Zachary V. "would be able to

perform simple, routine tasks and carry out simple instructions, but cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas." Tr. 27. The ALJ concluded, however, that more restrictive limitations beyond the assessed RFC are unsupported by "the nature of [Zachary V.'s] treatment and the findings made during the course of treatment," as well as the fact that Zachary V. had not "undergone any extensive treatment or inpatient or emergency intervention despite very conservative and inconsistent treatment and interference from substance use." Tr. 29.

Although the ALJ appropriately looked to the objective medical evidence of record in reaching the RFC determination, it is unclear how the cited evidence supports the production rate pace provision at issue. The "logical explanation" for an RFC finding is "just as important as" citing the evidence that reinforces that finding. *Thomas*, 916 F.3d at 311. When an ALJ identifies evidence to support a conclusion but fails to "build an accurate and logical bridge" from the evidence to the conclusion, the ALJ's finding cannot be meaningfully reviewed. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Here, the ALJ failed to explain how the evidence supports the conclusion that Zachary V. could not work at a production rate pace. The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of Zachary V.'s RFC.

But this conclusion does not end the Court's inquiry. In reviewing SSA decisions, the Court applies a harmless-error standard. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009).

Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential. After concluding that Zachary V. had a moderate CPP limitation[4], the ALJ examined the opinions of the state agency mental health consultants who "found no evidence to support severe mental impairment." Tr. 26, 29. The ALJ found these opinions unpersuasive, concluding that these assessments are "inconsistent with treatment notes and other evidence consistently describing difficulty with focus, motivation, self-esteem, stress management, judgment, irritability, and substance use." Tr. 29. Accordingly, the ALJ limited Zachary V. to, among other things, performing simple, routine tasks, carrying out simple instructions, performing jobs in a low stress work environment, tolerating occasional interaction with coworkers and supervisors, and no interaction with the public. Tr. 27.

The ALJ also restricted Zachary V. from performing work requiring a specific production rate such as assembly line work or work that requires hourly quotas. Tr. 27. However, the ALJ

[4] When a claimant has a mental impairment, an ALJ must make "a specific finding as to the degree of limitation" in CPP. *Patterson*, 846 F.3d at 659. CPP involves "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). When an ALJ determines that a claimant has a moderate CPP limitation, the ALJ must either include a corresponding provision in their RFC assessment or explain why no such provision is warranted. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

did not explicitly base these mental RFC provisions on any opinions contained in the record. *Cf. Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight"). In any event, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (holding that the ALJ accounts for the claimant's moderate CPP limitations when limiting the claimant to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

For the reasons discussed above, it is unclear how the ALJ determined that a production rate pace limitation was necessary. Nevertheless, the Court cannot conclude that the lack of explanation for this pace limitation amounts to reversible error. To the extent that a pace limitation was necessary at all, the ALJ adopted an RFC provision that was more restrictive than anything suggested within the record. Notably, Plaintiff does not argue that the ALJ failed to adequately accommodate Zachary V.'s moderate CPP limitations. *See* ECFs 9, 12. Additionally, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. Plaintiff also fails to explain how a more detailed explanation of either pace or the mental RFC might change the outcome of this case. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. Sept. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis). For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability. Thus, the ALJ's error was harmless. *Kersey*, 614 F. Supp. 2d at 696. The Court will therefore affirm the ALJ's decision.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's

judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge